IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KENNETH A. BATTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21CV692 |
| ) | |
| MERCEDES T. FORDHAM, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This prisoner civil rights action filed under 42 U.S.C. § 1983 comes before the Court on an unopposed Motion for Summary Judgment [Doc. #28] and a Motion to Seal [Doc. #32] filed by Defendants Andrufski, Dennis, Fordham, Hooks, Robinson, and Williams ("Defendants"). Plaintiff Kenneth A. Battle ("Plaintiff") is proceeding *pro se*. For the reasons set out below, Defendants' Motion for Summary Judgment should be granted. Defendants' Motion to Seal certain exhibits in support of the Motion for Summary Judgment will be granted.

I. BACKGROUND

Plaintiff filed this action based on two brief periods as an inmate at Albemarle Correctional Institution ("Albemarle") in September 2019 and November 2020, while he was serving his state sentence. (Compl. [Doc. #1] at 22-28.) Plaintiff names Mercedes T. Fordham, Joshua C. Dennis, Sergeant Williams, Officer Watson, Officer Tupper, Officer

Andrufski, Officer Moua, James R. Leach[1], Jeanette M. Robinson, Erik A. Hooks, and Dr. Karen Steinour as Defendants, asserting claims under the Eighth Amendment for deliberate indifference to his severe latex allergy and supervisory liability pursuant to 42 U.S.C. § 1983. Plaintiff sues all Defendants in their official and individual capacities. (Compl. [Doc. #1] at 3-8.) The North Carolina Department of Public Safety ("NCDPS") notified the Court of its inability to procure waivers of service of process for Defendants James R. Leach, Officer Moua, Karen Steinour, Officer Tupper, and Officer Watson because they were no longer working for NCPDS. (Sealed Notice [Doc. #10].) The remaining Defendants signed waivers of service and filed an Answer with defenses, and have now filed the present Motion for Summary Judgment.

In his Complaint, Plaintiff alleges that when he arrived at Albemarle, he notified the warden and prison staff of his severe latex allergy and of his prior settlement agreement with NCDPS regarding his latex allergy.[2] Plaintiff alleges that despite this notification, he was not

---

[1] Defendant James R. Leach's name appears to have been incorrectly spelled in the Complaint. The Court will use the spelling provided by the North Carolina Department of Public Safety.

[2] Plaintiff attached to the Complaint the Settlement Agreement from Case No. 5:17-CT-3126 in the United States District Court for the Eastern District of North Carolina. The Agreement requires NCDPS to provide Plaintiff with several accommodations for his latex allergy, including that he would be transferred to Harnett Correctional Institute and not moved except for a valid penological reason, and that at any facility he would be provided with cotton bedding, non-latex gloves for staff interacting with Plaintiff or his property, and non-latex shower shoes. (Settlement Agreement [Doc. #1-1] at 3-4.) To the extent Plaintiff seeks enforcement of the Settlement Agreement, this Court does not have jurisdiction as the United States District Court for the Eastern District of North Carolina has retained jurisdiction for the purpose of enforcing the terms of the Settlement Agreement. (Settlement Agreement [Doc. #1-1] at 5.) In his Complaint, Plaintiff indicated that he has filed another lawsuit dealing with the same facts alleged in this case, in a case in the Eastern District of North Carolina (5:20-CT-3258-D). Plaintiff raised the issue of noncompliance with the Settlement Agreement in the case in the Eastern District of North Carolina, which has jurisdiction to enforce the Settlement Agreement. In that case, Plaintiff also raised similar § 1983 claims involving other NCDPS facilities where he was housed in the Eastern District. That case was dismissed on a motion for summary judgment in an Order entered on August 11, 2023. In the present case, this Court reviews only the 42 U.S.C. § 1983 claims at Albemarle as set out in the Complaint.

issued cotton bedding and the Albemarle staff used latex gloves when interacting with Plaintiff, his property, and his food. (Compl. at 23.) Plaintiff alleges that on September 19, 2019, he submitted a grievance "complaining of pain, sores, bleeding, and mental and emotional stress due to his allergic reactions." (Compl. at 23.) Plaintiff alleges that Defendant Fordham was Associate Warden and was responsible for managing all institutional programs staff, including supervising medical staff. (Compl. at 9.) Plaintiff alleges that Defendant Dennis was the Assistant Unit Manager and was responsible for supervising the sergeants, officers, and case managers assigned to the unit team, which oversaw day-to-day case management, including the administrative remedy procedures. (Compl. at 10.) Plaintiff alleges that Defendant Williams was a Sergeant and was responsible for the day-to-day custody and security within the unit and administrative remedy issues. (Compl. at 11.) Plaintiff alleges that he repeatedly wrote to and spoke with unit managers and prison officials including Defendants Fordham, Dennis, and Williams regarding his severe latex allergy and the settlement agreement, and Plaintiff claims they refused to assist him in securing non-latex alternatives, which exposed him "to allergic reactions and the risk of anaphylaxis." (Compl. at 23.) Plaintiff alleges that Defendant Dennis refused to provide Plaintiff with non-latex alternatives and refused to instruct the Albemarle staff to use non-latex gloves when interacting with Plaintiff, his property, or his food. (Compl. at 24.) Plaintiff alleges that Defendant Dennis did not properly investigate his grievance or provide non-latex accommodations but instead responded to the grievance by saying that Plaintiff would be transferred to another facility. (Compl. at 24.) Plaintiff alleges that Defendant Fordham was assigned to investigate and review the second step of Plaintiff's grievance for lack of non-latex accommodations and noncompliance with

3

the settlement agreement, and Plaintiff claims that Defendant Fordham refused to properly review the grievance and investigate. (Compl. at 25.) Plaintiff alleges that Defendant Fordham responded regarding his grievance on October 8, 2019, stating that she had received his correspondence regarding his transfer request and the use of latex gloves, but Plaintiff claims that Defendant Fordham never attempted to investigate the lack of compliance with the settlement agreement but stated that Plaintiff's transfer should have mitigated the issue. (Compl. at 26.)

With respect to Plaintiff's time at Albemarle in November 2020, Plaintiff alleges that on November 16, 2020, Defendant Andrufski handed Plaintiff clothing while wearing latex gloves, knowing that Plaintiff had a latex allergy, and Plaintiff claims that as a result he was "unable to wear clean clothing or risk anaphylaxis." (Compl. at 24.) Plaintiff also alleges that Defendant Andrufski "caused an allergic reaction to Mr. Battle's wrist by handcuffing him after refusing to wash his hands or put on a pair of non-latex gloves." (Compl. at 24.) In addition, Plaintiff alleges that on November 17, 2020, Defendant Andrufski handed Plaintiff his food while wearing latex gloves and that Defendant Andrufski had non-latex gloves on his person but refused to wear them. (Compl. at 25.)

Plaintiff alleges that he informed all Defendants of his life-threatening latex allergy and prior settlement agreement, and that he suffered at least six life-threatening allergic reactions and several other allergic reactions causing sores, painful cracking and bleeding skin, emotional distress, and continued trauma, which Plaintiff claims was a result of Defendants' deliberate indifference to his serious medical needs. (Compl. at 27-28.)

4

Defendants argue in their Motion for Summary Judgment that Plaintiff has not shown deliberate indifference to a serious medical need or established a claim for supervisory liability and accordingly, Defendants should prevail on summary judgment. Defendants also argue that even if Plaintiff could establish a constitutional violation, they are entitled to qualified immunity.

II.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

Defendants filed a Motion for Summary Judgment arguing that there is no dispute as to any material facts and that they are entitled to judgment as a matter of law. The Court mailed Notice of the Motion to Plaintiff's address of record to inform him that a response was due within 30 days, and that failure to respond or file affidavits or evidence in rebuttal "may cause the court to conclude that the defendant[s]' contentions are undisputed and/or that you no longer wish to pursue this matter." Plaintiff did not file an opposition.

Local Rule 7.3 provides that "[i]f a respondent fails to file a response [to a motion] within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." LR 7.3(k). Having reviewed the record in this case, the Court concludes that Plaintiff's claims are subject to dismissal pursuant to Local Rule 7.3 on Defendants' Motion for Summary Judgment in light of Plaintiff's failure to respond to the Motion.

Moreover, having considered the Motion for Summary Judgment on the merits, the Court finds that Plaintiff has not presented any evidence that would create a genuine dispute as to any material fact, and the undisputed evidence presented by Defendants reflects that there was no violation of Plaintiff's constitutional rights. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) ("[I]n considering a motion for summary judgment, [the district court] must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, 'if the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.'") (quoting Fed. R. Civ. P. 56(e)).

6

With respect to Plaintiff's claims for deliberate indifference to his serious medical needs, the Fourth Circuit has explained:

> "A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "[O]nly the unnecessary and *wanton infliction* of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L.Ed.2d 271 (1991) (internal quotation marks omitted).
>
> A claim of inadequate medical care has both a subjective and objective element; "[t]he plaintiff must demonstrate that the [defendant] acted with deliberate indifference (subjective) to the inmate's serious medical needs (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An inmate alleging deliberate indifference must establish that his medical condition was objectively serious—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks omitted). The inmate also must establish the subjective element, namely that the official subjectively knew of and disregarded an excessive risk to the inmate's health or safety. Jackson, 775 F.3d at 178.
>
> Once prison officials are aware of a serious medical need, they only need to "respond[ ] reasonably to the risk." Farmer v. Brennan, 511 U.S. 825, 844, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. 1970. To find the prison officials liable, the treatment given must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Hixson v. Moran, 1 F.4th 297, 302-03 (4th Cir. 2021) (alterations in original).

Here, the record reflects that Plaintiff was transferred from Maury Correctional Institution to Albemarle Correction Institution on September 17, 2019. (Statement of Material Facts, Ex. 1 [Doc. #30-3] at 1.) On arrival at Albemarle, Plaintiff was provided with cotton mattress covers and sheets. (See Statement of Material Facts, Ex. 2 [Doc. #30-4]; Ex. 3 [Doc.

7

#30-5].) The medical staff at Albemarle noted Plaintiff's allergy, noted that he had been given cotton bedding, and noted that they would contact Maury Correctional Institution about how that facility accommodated Plaintiff's allergy and obtain items from that facility. (Statement of Material Facts, Ex. 2 [Doc. #30-4].) Plaintiff filed a grievance two days later, on September 19, 2019, in which he claimed that the Albemarle staff were not properly accommodating his latex allergy. (Statement of Material Facts, Ex. 3 [Doc. #30-5].) However, Plaintiff admitted in the grievance that he had received cotton mattress covers and sheets, but he complained that "it still doesn't help." (Statement of Material Facts, Ex. 3 [Doc. #30-5].) In the grievance, Plaintiff requested as a remedy that he be transferred to Harnett Correctional Institution. (Statement of Material Facts, Ex. 3 [Doc. #30-5].) Plaintiff did not request medical treatment for an allergic reaction, and beginning on September 24, 2019, less than one week after his arrival, Plaintiff refused further medical treatment from medical staff at Albemarle, reporting to them that he was going to be transferred. (Statement of Material Facts, Ex. 2 [Doc. #30-4].) On September 26, 2019, nine days after his arrival, Plaintiff was transferred from Albemarle to Harnett Correctional Institution. (Statement of Material Facts, Ex. 1 [Doc. #30-3] at 1.) Plaintiff did not request medical treatment for any allergic reaction while an inmate at Albemarle during the time that he was there from September 17 to September 26, 2019. (Statement of Material Facts, Ex. 2 [Doc. #30-4]; Ex. 4 [Doc. #30-6].)

Over a year later, on November 13, 2020, Plaintiff was transferred from Neuse Correctional Institution to Albemarle, but six days later, on November 19, 2020, Plaintiff was transferred back to Neuse Correctional Institution. (Statement of Material Facts, Ex. 1 [Doc. #30-3] at 1.) The record reflects that Plaintiff did not request medical treatment for any

allergic reaction while an inmate at Albemarle from November 13 to November 19, 2020. (Statement of Material Facts, Ex. 2 [Doc. #30-4]; Ex. 4 [Doc. #30-6].)

As stated above, Plaintiff has failed to respond or provide evidence that contradicts the evidence in the record, so these facts are not disputed. On these facts, Plaintiff cannot support a claim for deliberate indifference to a serious medical need. The record reflects that the medical staff at Albemarle did provide Plaintiff with cotton bedding, which was an accommodation for his latex allergy. In addition, staff reached out to his former facility to gather additional information and items to best accommodate his allergy. Further, there is no evidence or allegation that staff directly touched Plaintiff while wearing latex gloves, which also reflects an accommodation for his latex allergy.[3] Moreover, there is no evidence in the record that Plaintiff actually experienced a serious allergic reaction at Albemarle. In fact, the record reflects that Plaintiff did not request medical treatment for any allergic reaction while an inmate at Albemarle, and he declined any further medical care at Albemarle when he learned that he was going to be transferred to a different facility. Thus, although Plaintiff made the staff aware of his latex allergy and the potential risk of an allergic reaction, staff reasonably accommodated that allergy, and Plaintiff failed to seek medical treatment for any symptoms of an allergic reaction. Given these facts, Plaintiff has failed to show that the Albemarle staff knew of and disregarded an excessive risk to Plaintiff's health or safety.

---

[3] In the Complaint, Plaintiff alleges that he was handed items by staff members who were wearing latex gloves, and that he was touched by staff members with unwashed bare hands. However, Plaintiff has not presented any evidence in support of his allegations. Moreover, the allegations themselves reflect an effort not to touch Plaintiff directly with latex gloves, and there is no evidence that the Albemarle staff were aware that touching Plaintiff's clothes or food tray would cause a serious allergic reaction.

9

Case 1:21-cv-00692-WO-JEP    Document 36    Filed 08/23/23    Page 9 of 16

Plaintiff also asserts a claim for supervisory liability. Supervisors are not liable under § 1983 under a *respondeat superior* theory; rather, an individual is liable under § 1983 only when "the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). Therefore, to establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotations omitted); see also Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022).

As discussed above, Plaintiff has not established deliberate indifference as to a serious medical need. Similarly, the record does not support Plaintiff's allegations that Defendants Fordham, Dennis, or Williams had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; that their response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and that there was an affirmative causal link between the their inaction and the particular constitutional injury suffered by the Plaintiff. Here, there is no evidence that any Albemarle subordinate engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff and as discussed above, the record reflects that Albemarle staff were

attentive to Plaintiff's medical needs and responsive to his grievance. Therefore, there is no basis to establish supervisory liability.[4]

On the uncontested record before the Court, Plaintiff has not established an Eighth Amendment violation or established supervisory liability to support his § 1983 claim, and Defendants have shown that there are no genuine disputes as to any material facts. Therefore, Defendants are entitled to judgment as a matter of law, and Plaintiff's § 1983 action against these Defendants should be dismissed with prejudice.

The Court also notes that Defendants argue that even if there were a constitutional violation, they are entitled to qualified immunity. A court generally considers first in the qualified immunity analysis whether a constitutional violation has occurred. Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013). The above discussion concludes that Plaintiff has not established a constitutional violation. However, if there were a constitutional violation, the Court next considers "whether the right violated was clearly established at the time of the official's conduct." Id. (internal quotation omitted).

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S., at 206, 121 S. Ct. 2151. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (alteration in original).

---

[4] Plaintiff also makes various allegations in the Complaint related to the grievance procedure. However, there is no constitutional right to a grievance procedure, and the handling of a particular grievance does not form a separate basis for a § 1983 claim. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); accord Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017).

Here, the record reflects that the alleged constitutional violation can be summarized as refusing to provide specific requested accommodations to lower the risk that an inmate would have an allergic reaction to latex, but offering other reasonable accommodations when notified that an inmate had a latex allergy, and making medical care and consultation available, with no evidence of any acute allergic reaction or need for medical care for the allergy at the facility with the accommodations offered. The Court concludes that it would not be clear to a reasonable officer that this conduct violated a clearly established right. Therefore, even if Plaintiff had established a constitutional violation, Defendants would still be entitled to qualified immunity. Accordingly, this case should be dismissed with prejudice.

III. UNSERVED DEFENDANTS

As noted above, NCDPS obtained waivers of service for the Defendants who have moved for summary judgment, but NCDPS notified the Court of its inability to procure waivers of service of process for named Defendants James R. Leach, Officer Moua, Karen Steinour, Officer Tupper, and Officer Watson because they were no longer working for NCPDS. (Sealed Notice [Doc. #10].) These named Defendants remain unserved. For the reasons set out above with respect to the Defendants who appeared and moved for summary judgment, it appears that the claims against the unserved Defendants would also be subject to dismissal. However, the Court notes that Plaintiff paid the filing fee and is not proceeding *in forma pauperis*. As a result, his claims are not subject to *sua sponte* review and dismissal under 28 U.S.C. § 1915(e)(2). Nevertheless, because Plaintiff is not proceeding *in forma pauperis*, the Court is not obligated to assist with service under 28 U.S.C. § 1915(d), and Plaintiff remains responsible for service of process. Plaintiff's 90 days for service have passed, the Court gives

12

Plaintiff notice that the unserved Defendants will be dismissed pursuant to Federal Rule of Civil Procedure 4(m), unless Plaintiff obtains service on Defendants James R. Leach, Officer Moua, Karen Steinour, Officer Tupper, and Officer Watson and files a letter showing good cause for the failure to serve these Defendants within 30 days from the entrance of this Order and Recommendation. If Plaintiff does not obtain service and file a letter showing good cause within 30 days, the claims against the unserved Defendants will be dismissed without prejudice for failure to prosecute, failure to obtain service under Rule 4, and failure to comply with this Order.

IV. DEFENDANTS' MOTION TO SEAL

Finally, Defendants have filed a Motion to Seal [Doc. #32], seeking to seal Exhibits 2 and 4 to the Statement of Material Facts [Doc. #30] supporting the Motion for Summary Judgment. The public right of access to judicial records finds its basis in both the common law and the First Amendment. See Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988). With respect to the documents and information at issue in the present case, the Fourth Circuit has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." Doe v. Pub. Citizen, 749 F.3d 246, 267 (4th Cir. 2014) (citing Rushford, 846 F.2d at 252-53). When the First Amendment is implicated, the court may grant a motion to seal only upon a showing of a compelling interest, and only if the sealing is narrowly tailored to serve that interest. See Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "A district court must . . . weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the

13

request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id. at 576; see also Fernandez Gonzalez v. Cuccinelli, 985 F.3d 357, 376 (4th Cir. 2021) ("To seal a document, the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing.").

Defendants seek to file under seal Plaintiff's unredacted medical records in support of the Motion for Summary Judgment. These medical records include Plaintiff's medical history and the medical treatment Plaintiff received while incarcerated at Albemarle from September 17 to September 26, 2019, and November 13 to November 19, 2020. (Def. Mot. [Doc. #32] ¶ 6.) Defendants contend that these records are necessary for the Court to determine whether Plaintiff had a serious medical need while at Albemarle and whether Defendants were deliberately indifferent to any such need. (Def. Mot. [Doc. #32] ¶ 6.) The Court agrees.

Here, Defendants' Motion to Seal was publicly docketed on February 16, 2023. Interested parties have therefore had a reasonable amount of time to contest the sealing of the information at issue, although no party has done so. Accordingly, the notice requirement has been met. See Hunter v. Town of Mocksville, 961 F. Supp. 2d 803, 806 (M.D.N.C. 2013) (finding "public notice" requirement met where motion to seal had been publicly docketed for one month). The proposed sealed exhibits contain Plaintiff's "confidential sensitive and personal medical information, the protection of which serves an important governmental interest." Fulp v. Columbiana Hi Tech, LLC, No. 1:16CV1169, 2018 WL 1027159, at *10

14

Case 1:21-cv-00692-WO-JEP    Document 36    Filed 08/23/23    Page 14 of 16

(M.D.N.C. Feb. 21, 2018). Finally, the sealing that Defendants seeks is narrowly tailored. Nearly all of Exhibits 2 and 4 contain sensitive information, such that less drastic alternatives are not feasible. Balancing the compelling interest to protect Plaintiff's private medical information with the First Amendment right of access, the Court will grant the motion to seal as it is narrowly tailored, and there is sufficient public information to explain the Court's reasoning. See id. (granting the motion to seal where there was "no less restrictive way to serve that interest than sealing the entirety of those medical records because of the breadth of confidential information throughout the records.").

V. CONCLUSION

For all the reasons set out above, the Court will recommend that Defendants' Motion for Summary Judgment be granted and that this case be dismissed with prejudice. Additionally, to protect Plaintiff's sensitive medical information, the Court grants Defendants' Motion to Seal.

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgement [Doc. #28] be granted, and that all the claims against Defendants Andrufski, Dennis, Fordham, Hooks, Robinson, and Williams be dismissed with prejudice.

IT IS ORDERED that Defendants' Motion to Seal [Doc. #32] is GRANTED.

IT IS FURTHER ORDERED that pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff is directed to obtain service and file a letter within 30 days showing good cause for the failure to serve Defendants James R. Leach, Officer Moua, Karen Steinour, Officer Tupper, and Officer Watson. If Plaintiff does not obtain service and file a letter showing good cause within 30 days, the claims against the unserved Defendants will be dismissed without

prejudice for failure to prosecute, failure to obtain service under Rule 4, and failure to comply with this Order.

This, the 23rd day of August, 2023.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge